UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | ) |
| | ) Case No. 16-32-2 |
| v. | ) Section "M" |
| | ) |
| **LOUIS AGE JR.** | ) Judge Barry W. Ashe |
| **LOUIS AGE III** | ) |
| **RONALD WILSON JR** | ) |
| **KENDRICK JOHNSON** | ) |
| **STANTON GUILLORY** | ) |

**REPLY TO GOVERNMENT'S OPPOSITION TO
MOTION FOR PRODUCTION OF JURY SELECTION RECORDS
PURSUANT TO 28 U.S.C.S. 1867(f)**

Mr. Age Jr., moved to inspect, reproduce, and copy records or papers used by the clerk in connection with the jury selection process. Doc 340.

The Government recognized that the release of these records was a matter for the court and not the prosecution, but ultimately filed a Memorandum of Law opposing, in part, Mr. Age Jr.'s motion. Doc 358, 360.

In its Memorandum, the Government eschewed circuit law and cherry picked district court and other opinions from elsewhere in the country in an effort to argue that Mr. Age Jr's unqualified right of access was qualified as to: names and addresses; the voter registration list; the proprietor of the electronic data processing system used by the clerk; qualification forms; documents relating to the service and delivery of qualification forms, summonses and notices to appear; and records and papers from the prior jury wheel. The government further argues that Mr. Age Jr. should be satisfied with an AO-12 form prepared by another branch of the government (the Clerk).

As detailed below, the Government's Memorandum fails to assist this court in understanding applicable law by failing to address relevant authority in this circuit, by urging the

1

court to impose a prohibited requirement that Mr. Age Jr. show a necessity for the records to bring a viable challenge and by continuing an obstructionist posture to Mr. Age Jr.'s access to these records that has lasted for over a year.

## I. The Fifth Circuit has upheld the essentially unqualified right of access to records or papers used by the clerk in connection with the jury selection process, in contrast to the approach taken in out of circuit cases relied upon by the Government

The government seeks to qualify an essentially unqualified right of access to records and papers connected to jury selection in defiance of statute and binding caselaw and by reference to out of circuit cases.

Starting with the statute, the plain text of the statute grants what the Supreme Court described as an unqualified right of access. Reordering the words for sense, the statute provides that "[t]he parties in a case shall be allowed to inspect, reproduce, and copy ['records or papers used by the jury commission or clerk in connection with the jury selection process'] at all reasonable times during the preparation and pendency of ['a motion under subsection (a), (b), or (c) of this section']." 28 U.S.C.S. § 1867 (f).

In *Test*, 420 U.S. 28 (1975), the defendant sought the master and qualified jury lists specifically to investigate and aid a challenge that the master lists "systematically excluded disproportionate numbers of people with Spanish surnames, students, and blacks." *Test*, 420 U.S. at 29. Notably, the defendant was specifically asking to inspect the ***names*** on the jury lists. The Supreme Court found that the court below had erred in denying this request and described the defendant's right to obtain the requested lists under § 1867(f) as "essentially unqualified." *Id.* at 30. The Court explicitly held that an unqualified right of inspection was required by both the plain text of the statute and the statute's overall purpose. *Id.* While referring to the lists the subject of

the request in *Test*, the Court was relying upon the plain language of the statute which covers the records or papers used in connection with the jury selection process. *Id.* The Court also made the point that the unqualified right of access was granted in aid of the preparation of the motion challenging selection procedures and without that inspection, the defendant would be unable to determine whether he has a potentially meritorious challenge. *Id.*

The *Test* case was remanded so that the defendant could attempt to support his challenge and on remand, the defendant was allowed "to inspect **both the master and qualified jury wheels and the qualifying questionnaires** returned by prospective jurors." *United States v. Test*, 550 F.2d 577, 581 (10th Cir. 1976)(en banc) (emphasis added).

Whatever the approach in other circuits, efforts to limit *Test* to a right of access to jury lists or to impose a requirement that the defendant show a necessity for the requested records are precluded by binding Fifth Circuit precedent.

In *Government of the Canal Zone v. Davis*, 592 F.2d 887 (5th Cir. 1979), the Fifth Circuit Court of Appeals dealt with a case in which access was sought not just to the jury lists but to "Records and Papers in the Custody of and Used by the Jury Clerk in Connection with the Jury Selection Process." *Id.* at 888. The Fifth Circuit recognized that the Court in *Test* was addressing *lists* but clearly held that the lower court erred in denying Davis' request and that the defendant had an unqualified right to inspect the *records*. *Id.* at 889.

The court in *Davis* also unequivocally held that a defendant need not file an affidavit or make some other prima facie showing of a claim for relief before gaining access to the records and papers. *Id.* at 889. *See also United States v. Potts*, 538 F. App'x 434, 437 (5th Cir. 2013) (accord). A defendant in the Fifth Circuit cannot be required to identify a particular claim of error or how

3

the requested records will support such a claim of error. It is enough that the records requested are used in connection with the jury selection process.

In *Potts*, the defendant sought access to the grand jury lists for the last ten years, including the list of the grand jury that indicted him. *United States v. Potts*, 538 F. App'x 434, 435 (5th Cir. 2013). The district court denied access and the Fifth Circuit, citing § 1867, *Test* and *Davis* held that "the district court improperly denied Potts's motion to inspect the grand jury list" and remanded to allow Potts access to the requested record and to bring any resulting challenge. Id. at 436-7.

In *Causey*, the defendant sought access to records and papers used in connection with the jury selection process. *United States v. Causey*, 04-25 (S.D. Tex. May 25, 2004); 2004 U.S. Dist. LEXIS 30015. The district court correctly described *Test* and *Davis* as "characteriz[ing] a defendant's right to inspect records and papers used by the Clerk in connection with the jury selection process as 'essentially . . . unqualified.'" *Causey*, at *17-18. Consistent with circuit authority, the district court did not then try to read down this unqualified right.

At the time of Causey's request, the Southern District of Texas Jury Plan "prohibited disclosure of the names of those selected for grand jury service except by order of the chief judge upon written motion for good cause." Thus, the court in *Causey* referred access to records of the actual grand jurors to the Chief Judge but otherwise granted the disclosure orders as follows:

- Access to Master lists, including names and addresses, except for names and addresses of actual grand jurors;

- Access to the qualified jury list, including names and addresses, except for names and addresses of actual grand jurors

4

- Access to the lists from which the grand jurors were drawn, including names and addresses, except for those of the actual grand jurors.;

- Access to juror qualification questionnaires, including names and addresses, except for the questionnaires of actual grand jurors.

- Access to documents used by the Clerk for determining qualifications, excuses, and exemptions for purposes of compiling the qualified wheel, except as relates to actual grand jurors.

- Denying access to documents related to the selection (excusals and challenges) of the actual grand jury that indicted the defendant because the same grand jury was still in session.

- Access to orders convening and extending the term of the grand jury;

In *Carlock*, the defendant sought access to records including the master wheel, qualified wheel and qualification forms. *United States v. Carlock*, 606 F.Supp. 491, 493 (W.D. La. 1985). The court granted access to the master wheel, qualified wheel and qualification forms, including names and addresses, but denied access to the names drawn from the qualified wheel for the petit jury as premature under a specific provision of the WDLA Jury Plan. *Id.* at 492-4. Similarly, the court denied access to records of the grand jury members as the same grand jury was still sitting but granted the defendant the right to make further application once the grand jury term ended should the master lists and qualified lists prove inadequate. *Id.*

Undersigned counsel has identified one case in this district where access to names and addresses was restricted but a review of the underlying pleadings reveals that the defendant was appearing *pro se* and sought records concerning the selection of the grand jury but did not request names and addresses. *United States v. Frye*, 2006 U.S. Dist. LEXIS 102701 (E.D. La. Apr. 6,

2006).  In *Frye*, the court granted access to the master wheel, qualified wheel and jury questionnaires related to grand jury selection but redacted names and addresses.  Unlike *Frye*, the defendant in the present case is represented, is seeking names and addresses and has provided jurisprudential support for that request.

The EDLA Jury Plan incorporates § 1867 (f) and chooses to protect the identities of actual grand jurors by directing that they not be identified as such when the jury lists are released.

Thus, in this circuit the binding and persuasive caselaw reinforces the statute's essentially unqualified right to access to records and papers used in connection with the jury selection process.

The government memorandum fails to address these authorities, not even alerting this court to the existence of binding authority from the Fifth Circuit.  The government Memorandum does refer to *Causey*, but only by parenthetical stating that *Causey* collects authorities for the proposition that access to records other than jury lists may be restricted.  This is misleading when the holding of *Causey* is to the contrary.  In *Causey* the court granted virtually every aspect of a request similar to that made in the present case.

Rather than dealing with authority from this circuit, the government relies upon cases from other circuits, many of which deal only with access to the names of actual grand jurors (not in issue here), are not cases brought under § 1867 or come from circuits with a different approach to that taken by the Fifth Circuit.

The Government particularly relies upon *United States v. Davenport*, 824 F.2d 1511 (7th Cir. 1987), citing the case five times throughout its opposition. *Davenport* is not only not the law of this circuit, it departs from the Fifth Circuit's approach and its authority cannot be considered persuasive here.  The same is true of those out-of-circuit district court decisions that have followed *Davenport*.

6

In *Davenport*, the Seventh Circuit erroneously held that no documents were at issue in *Test*, other than jury lists. *Id.* at 1514. Of course, we know that on remand Test was given full access to the master wheel, qualified wheel *and* jury questionnaires. *See Test*, 550 F.2d at 581. The Seventh Circuit also relied upon the fact that prior jury lists (including juror names) were made available on a monthly basis by the clerk's office, obviating the need for the release of other records. *Id.* at 1515. However, in the present case the government opposes the release of names and addresses on prior jury lists.

Perhaps most significantly, the *Davenport* court held that the defendant had failed to show that he needed more records than he had been provided in order to make out a claim and failed to set forth a viable basis for a jury selection claim. *Id.* This holding is directly contrary to the approach of the Fifth Circuit (and the Supreme Court). *Davis*, 592 F.2d at 889 (whether or not accompanying affidavit established a prima facie case is of no import as right of access is to allow defendant to determine whether he has a potentially meritorious challenge) *citing Test*, 420 U.S. at 29 n.2 (right of access is unqualified and does not depend on making a showing of a jury selection error). *See also United States v. Alden, 776 F.2d 771, 775 (8th Cir. 1985)* ("Even if the defendant's anticipated challenges to the jury selection process, as articulated at the time of his motion for inspection, are without merit, the defendant may still inspect the jury records."); *United States v. Royal*, 100 F.3d 1019, 1025 (1st Cir. 1996) (accord).

The other case the government places its greatest reliance upon is *United States v. Rice*, 489 F. Supp. 2d 1312 (S.D. Ala. 2007), citing the case five times. That is an out of circuit, district court order that expressly adopts the *Davenport* approach of denying access to records in the absence of a prior showing of how the records will establish a viable claim. *Id.* at 1319-20. This approach is contrary to binding Fifth Circuit precedent. (*supra*). Further, the government fails to

7

advise this court that in *Rice* the court granted access to the database containing the master jury wheel and qualified jury wheel (including names and addresses) as well as identifying the software used by the clerk for jury selection.

In short, the statute, Supreme Court and Fifth Circuit caselaw clearly support Mr. Age Jr.'s carefully drawn request for records and papers used by the clerk in connection with the jury selection process.

## II. Mr. Age Jr. is entitled to the records and papers in order to investigate any challenge that may be brought under the JSSA and is not required to accept the clerk's assurances that the system is working as intended

### A. The basis for challenge is not limited to a fair cross-section claim but includes any substantive failure to comply with the JSSA or the Jury Plan

Throughout its opposition, the Government erroneously argues that the only basis for a challenge to the method of jury selection is a Fair Cross-Section challenge. The Government seeks to use this erroneous premise to argue that a defendant should then be satisfied with records that indicate whether or not there is under-representation of a particular race.

The Government is wholly incorrect.

The JSSA explicitly provides that a defendant may challenge the jury selection procedures "on the ground of **substantial failure to comply with the provisions of this title** in selecting the grand or petit jury." 28 U.S.C.S. § 1867(a) (emphasis added). Obviously, constitutional claims under the Fair Cross-section and Equal Protection clauses are also available.

The JSSA contains numerous provisions setting out requirements for lawful jury selection; provisions which are broader in reach and more specific in their terms than a bare fair-cross-section challenge: 28 U.S.C.S. § 1862 (prohibiting exclusion "on account of race, color, religion, sex, national origin, or economic status."); 28 U.S.C.S. § 1863 (requiring that selection proceed

8

according to the terms of a locally approved jury plan and setting out the minimum requirements to be followed in that plan); 28 U.S.C.S. § 1864 (detailing the manner of selection of the master wheel, the use of qualification forms and the steps to be taken where qualification forms are not returned); 28 U.S.C.S. § 1865 (the basis and process for determining whether a juror is unqualified, exempt or excused from jury service, including proper documentation of such determinations and of the result of service of the summons); 28 U.S.C.S. § 1866 (the process for selection and summonsing of jurors from the qualified wheel and the basis and process for determining whether a juror is unqualified, exempt or excused from jury service, including proper documentation of such determinations and of the result of service of the summons); 28 U.S.C.S. § 1868 (the maintenance of records of jury selection to permit review to determine the validity of the selection of any jury)

Thus, a defendant may bring a challenge to the jury selection on the basis of, *inter alia*, non-compliance with the detailed provisions providing for: the use of the proper source lists; development of the master wheels from the source lists; the development of the qualified list; qualifications, excusals and exemptions; summons processes and the procedure upon the return of summonses; the selection of jury panels from the qualified list; and, the proper maintenance of the records of jury selection by the clerk's office. Furthermore, the category of cognizable groups who may not be excluded from jury service is much broader than has yet been recognized under purely constitutional claims.

These provisions are directly reflected in the specific requests for information filed by Mr. Age Jr. Those requests track the language of the JSSA and the EDLA Jury Plan, seeking records necessary to determine whether compliance with the provisions of the JSSA has been met and at what stage non-compliance has led to an unrepresentative or non-random selection process.

### B. Mr. Age Jr. is not required to accept the assurances of the government or the Clerk that the jury selection process is working as intended

Throughout its opposition the Government asserts that Mr. Age Jr. should be satisfied with reports such as the AO-12 in which it is averred that the Clerk has done the right thing and that the jury selection process is working well.

This argument is wholly unsupported by law or logic. As the United States Supreme Court made clear in *Test*,[1] the entire point of the JSSA procedure for access to jury selection documents and for challenges to the adequacy of the jury selection is to ensure full compliance with the law. The statutory scheme is predicated on the idea that the defendant does not have to take the clerk's word for it but may inspect the documents and make such challenges as may emerge.

As the Fifth Circuit Court of Appeal stated over fifty years ago, "in considering whether the Constitution has been violated, no conclusive presumption of truth is to be accorded the recitals of the *proces verbal* or of any other record, but the true facts may be developed." *Collins v. Walker*, 329 F.2d 100, 104 (5th Cir. 1964).

It is no insult to the Clerk or the U.S. Attorney for the defendant to insist upon his own right to verify the jury selection process and not simply take the government's word for it.

## III. Specific objections by the Government

### A. Names and addresses

The Government argues that the defendant has no right to and should not receive and names and addresses at any stage of the jury selection process. This proposition is contradicted by binding

---

[1] "[A]n unqualified right to inspection is required not only by the plain text of the statute, but also by the statute's overall purpose of insuring 'grand and petit juries selected at random from a fair cross section of the community.' 28 U. S. C. § 1861." *Test*, 420 U.S. at 30.

10

authority and by cases the government itself cites as well as being rendered almost nonsensical in Louisiana, where voter registration lists, from which the jury lists are drawn, are public records.

Names and addresses are an integral part of any competent investigation of the adequacy of a court's jury selection process.[2]

The caselaw supports the release of names and addresses.

The defendant in *Test* specifically requested the lists so that he could check for discrimination based on the names. The Supreme Court found error in failing to give him the lists and ordered that they be provided. On remand the defendant was provided with the master list, the qualified list and the juror questionnaires without any order redacting names and addresses.

In *Davis*, 592 F.2d at 888, the Fifth Circuit Court of Appeals affirmed the essentially unqualified right of access to records and papers used by the clerk in the jury selection process. In *Potts*, 538 F. App'x at 436, the Fifth Circuit found that the district court erred in denying access to the grand jury lists requested by the defendant, lists which necessarily included the names and addresses. In *Causey*, the district court granted access to the master list, qualification list and questionnaires, including names and addresses, except for the information regarding the actual grand jury, as to which the requests were to be directed to the Chief Judge pursuant to the WDTX Jury Plan. In *Carlock*, the defendant was granted access to the jury lists, including names and

---

[2] For instance, only by access to names and addresses can a defendant confirm the addresses at which service fails and link those jurors to other data to demonstrate that a disproportionate failure to successfully serve poorer communities results in systematic under-representation and that this failure relates to manner in which addresses are obtained and perhaps even Louisiana's notorious failures to comply with the National Voter Registration Act. Similarly, absent a confession from the clerk, only names and addresses would allow a defendant to prove intentional exclusion from service of a specific geographical area, as occurred with the refusal to serve jury summonses in the Desire Projects in *State v. Cage*, 337 So.2d 1123 (La. 1976). Further, in *Test* itself the intended challenge was to the exclusion of jurors with Hispanic sounding names – a challenge that cannot be investigated without access to the names. Finally, undersigned counsel are currently involved in a federal proceeding in another state where non-random selection has been identified by identifying the number of jurors with shared addresses – another investigation that could not be undertaken without access to the names and addresses. In that case, the clerk provided the material under §1867(f) without the need for a court order.

11

addresses except for temporary restrictions as to the details of the currently sitting grand jury and the specific petit jury that was to be selected. The EDLA Jury Plan does not seek to restrict access to names and addresses but only requires that grand jurors not be identified as such.

At Opposition, 5-7 the Government argues that no identifying information should be provided. In support of this proposition, the Government cites six out of circuit cases, almost all of which relate to requests to access the names of actual grand jurors – a question not in issue here. The Government declines to address the circuit authorities raised by Mr. Age Jr. in his motion and instead relies upon *Davenport*, which has been distinguished above.

Furthermore, names and addresses were released in a number of the cases cited by the government and in other out of circuit cases. *United States v. Diaz*, 236 F.R.D. 470, 482 (N.D. Cal. 2006) (granting access to names and addresses of all but the actual grand jurors); *United States v. McLernon*, 746 F.2d 1098, 1123 (6th Cir. 1984) (granting access to master lists and demographic data about the general pool from which the grand jurors were selected, but not the names of actual grand jurors); *Rice*, (supra) (granting access to names and addresses of master wheel and qualified wheel); *Davenport* (supra) (granting access to names of jurors from prior jury lists). See also *United States v. Huber*, 457 F. Supp. 1221, 1229-30 (S.D.N.Y. 1978) (Defendant provided access to master and qualified wheels and questionnaires, including names and addresses); *United States v. McCluskey*, No. CR 10-2734 JCH, 2012 WL 13076593, at *2 (D.N.M. Apr. 12, 2012) (granting access to jury lists, including names, addresses, race, gender).

The question under § 1867 (f) is whether the requested documents are records or papers used by the clerk in connection with the jury selection process. The answer is manifestly, "Yes". The only qualification then placed upon the right of access by the statute and by the Supreme Court in *Test* is that access be at reasonable times. The only other qualification placed upon access by

the EDLA Jury plan is that actual grand jurors not be identified as such in the documents provided. Mr. Age Jr.'s request meets both of these concerns.

Mr. Age Jr. has a right to the requested records and papers, including names and addresses, and his motion should be granted.

### B. Voter registration lists, the source of the lists and the date provided

The voter registration lists are obtained by the Clerk pursuant to the JSSA and the EDLA Jury Plan and are self-evidently records or papers used in the jury selection process. They are the source list from which the master wheel must be drawn and the correct source lists must be used for compliance with the JSSA and the EDLA Jury Plan. Furthermore, a challenge may be predicated upon the source lists themselves being insufficiently representative of the community from which they are drawn.

Louisiana's voter registration lists are public records available for purchase from the Secretary of State via the Secretary's website by any member of the public.[3] The voter registration lists contain, *inter* alia, name, address, race, sex and age. The questions under the JSSA and the EDLA Jury Plan are: which lists were used; were they the correct lists; are the lists sufficiently accurate; and, are they sufficiently representative to generate a fair cross-section under the JSSA and the federal constitution?

Furthermore, under Louisiana law, jurors have no reasonable expectation of privacy in their name and address on jury venire lists drawn from the voter lists. *Cull v Cadaro*, 68 So. 3d 1161 (jurors have no reasonable expectation of privacy in information on jury venire lists except for social security numbers).

---

[3] https://www.sos.la.gov/ElectionsAndVoting/BecomeACandidate/PurchaseVoterLists/Pages/default.aspx

Thus, there is no risk that the JSSA and the EDLA Jury Plan are transforming confidential state documents into open documents by their use in federal proceedings. Indeed, the Government attempts the opposite – it seeks to shroud in secrecy what is actually public information.

C.    **Proprietor of the electronic data processing system**

The software used to manage the jury selection process should clearly be understood to be part of the records and papers used in connection with the jury selection process. Identifying that software allows Mr. Age Jr. to identify known defects in the software and understand the records and papers produced by the software.

There is absolutely no reason not to disclose the software being used and the government's attempt to do so serves only to obstruct the purposes of the JSSA.

D.    **Qualification forms**

In both *Test* and *Causey* the defendant was provided with the qualification forms under §1867(f).

The qualification forms are unquestionably records or papers used in connection with the jury selection process. Indeed, they are some of the most telling documents used in that process and one of the most likely places for error to enter the jury selection process.

In opposing access to juror qualification forms the government once more relies upon *Davenport* (and district court decisions in *Diaz* and *Rice* that expressly rely upon *Davenport* and each other). As previously stated, *Davenport* is contrary to the law of this circuit and misunderstands that in Test the questionnaires were ultimately made available. Further, it is clear from *Davenport* that the court is not seeking to implement a general ban on providing questionnaires but responding to what it understood to be a frivolous request designed to obtain the questionnaires for the purpose of preparing for voir dire.

14

The answers to the questionnaires maintained by the Clerk are clearly records or papers used in connection with the jury selection process and Mr. Age Jr. has an essentially unqualified right of access to those records to assist in preparation of a motion under the JSSA.

E. **Documents relating to the service or delivery of qualification forms, summonses and notices to appear**

Records and papers arising from the service or non-service of prospective jurors are self-evidently used in connection with the jury selection process. That should be enough to end the matter as Mr. Age Jr. need show no more.

However, it is also well understood that under-representation of particular groups may be the result of ineffective systems of service and address maintenance that fall disproportionately upon particulars groups, particularly the poor. Such under representation is clearly systematically caused and in direct violation of the JSSA.

Mr. Age Jr. is clearly entitled to the requested records and papers and those documents are also critical to any competent review of the adequacy of the jury selection process at play in this case.

F. **Records and papers from the prior jury wheel**

The government at one point argues that only the master and qualified jury wheel associated with the 2017 grand jury are relevant but this is incorrect.

Leaving aside § 1867(f), under 28 U.S.C.S. § 1868, Mr. Age Jr. has guaranteed access to the records of prior jury selection under the preceding master wheel.

Furthermore, a challenge based upon systematic under-representation cannot usually be supported by apparent under-representation in a single instance of jury selection. More data is required to develop and present such a claim.

## IV. This court may enter orders regulating counsel's use of the records and papers used in jury selection

While the right of access to the records is essentially unqualified, this court may properly enter orders designed to address any real or imagined concern about the privacy or safety of prospective jurors.

Commonly, such orders include provisions that the records are to be used only for the purpose of investigating a challenge to the jury selection process and, where there are concerns about a defendant having access to the names and addresses, an order that the documents be provided to counsel and not shared with the client.

Mr. Age Jr. rejects any suggestion that he represents any risk to prospective or former jurors and the government's concern that Mr. Guillory is alleged to have gang affiliations cannot support any limitation on Mr. Age Jr.'s right of access to the records and papers used in the jury selection process.

That said, with trial looming, the most important thing is to get access to the records and papers and allow the work of developing the relevant claim to proceed. For this reason, counsel does not oppose the court's entry of an appropriately crafted protective order.

## V. Notice and an opportunity to be heard on the necessity for particular records

The government urges this court to deny access to records or papers used in the jury selection process unless Mr. Age Jr. first demonstrates a necessity for the particular records in order to establish a viable claim. As discussed above, the government's argument is contrary to binding caselaw.

However, should this court rule that Mr. Age Jr. not be granted access to particular records or parts of records without making a specific showing as to why he needs them or what claim they

would support then Mr. Age Jr. should be provided with notice and an opportunity to make that showing.

## CONCLUSION

WHEREFORE, for the foregoing reasons, the defendant moves this court to enter an order allowing Mr. Age Jr., through his counsel, to inspect, reproduce, and copy records or papers used by the clerk in connection with the jury selection process.

Respectfully submitted,

*/s/ Richard Bourke*
Richard Bourke, LA #31428
Christine Lehmann, LA #37905
Louisiana Capital Assistance Center
636 Baronne Street
New Orleans, LA 70113
504-558-9867
504-558-0378 (fax)

Attorneys for Louis Age, Jr.

## CERTIFICATE OF SERVICE

I hereby certify that on February 26, 2020 I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all parties.

*/s/ Richard Bourke*